Paul CLARK, Petitioner,

v.

**FIRST BAPTIST CHURCH, Tri-State Insurance Company and State Industrial Court, Respondents.**

No. 50998.

Supreme Court of Oklahoma.

Oct. 4, 1977.

**328**

Jack D. Crews, Ash, Shamas & Crews, Okmulgee, for petitioner.

E. D. Hieronymus, Rhodes,. Hieronymus, Holloway & Wilson, Tulsa, for respondents.

BERRY, Justice.

Claim for compensation was denied for lack of jurisdiction, upon determination claimant was not an employee within purview of Workmen's Compensation Act, 85 O.S.1971, § 1 et seq., at time of injury. This order was affirmed on en banc appeal, and claimant brings this proceeding to review and vacate the order of denial.

Claimant was a tithing member of respondent church when accidentally injured [April 10, 1976] while trimming a tree on church property. Other maintenance work had been performed in the past at the pastor's request. The pastor had inquired whether claimant could remove the tree and claimant voluntarily agreed to do the work at his own convenience and using his own tools.

The church had part-time salaried employees and ten full-time employees. These employees were carried on the church payroll, which was audited for the purposes of compensation coverage. Three methods were used in making payment after voluntary services had been rendered by church members: [1] the volunteer could request payment; [2] work could be treated as a contribution and credited to a member's account at a rate agreed upon; [3] voluntary work simply was a donation. Although voluntary work could be treated as a tithe, volunteers were not listed on the payroll for compensation purposes unless a salary also was paid. However, the pastor considered them as employees if accidentally injured.

The pastor testified concerning three accepted modes of payment, and that prior to this occurrence claimant had performed other work. After completion the pastor would inquire as to the charge for any work, and then direct the financial secretary to credit claimant's tithing account. When this work was requested payment was not discussed and claimant did not know the pastor's intention was to allow claimant to determine an acceptable mode of payment. During a conversation in June claimant stated he worked 3½ hours, and usually got $4.00 per hour for such work. A check for $15.00 was sent to claimant on August 11, 1976, and entered on the church's general ledger.

The church payroll was audited by the insurer in September, 1976. Claimant's name did not appear on the payroll records, or Social Security records. The auditor inquired whether casual labor had been employed but was not advised concerning claimant. The mentioned check was charged against "Building Maintenance", but the checkbook was not examined by the auditor.

The issue for review concerns alleged error of the trial court finding that claimant was not an employee within terms of our Act, supra.

Settled law requires existence of a master and servant relationship as the prime requisite for award of compensation. *Smith Bros. Road Const. Co. v. Palmer,* Okl., 389 P.2d 495; *Hillcrest Hospital v. State Industrial Court,* Okl., 452 P.2d 781. Whether a master and servant relationship exists is a question of law, which will be determined by the Supreme Court on review [as a matter of law] by weighing all the evidence. *Campbell v. Elledge,* 184 Okl. 147, 85 P.2d 412; *Hillcrest Hospital,* supra.

The argument asserts because unrefuted evidence showed the tree was trimmed at the pastor's request, and two types of recompense were received as wages under the hiring contract, claimant was engaged in manual labor for wages and thus was an employee within meaning of 85 O.S.1971, § 3(4), (8). Therefore, even if the cash payment [$15.00] should not be con-

sidered wages, remuneration received by credit to claimant's tithe constitute wages and evidenced a master and servant relationship. Authority for this conclusion presumably is found in Larson's Workmen's Compensation Law § 47.41(a) and decision in *Schreckengost v. Gospel Tabernacle*, 188 Pa.Super. 652, 149 A.2d 542.

Neither the text rule nor the cited decision based thereon are applicable to the present case. The rule is premised upon reasoning in respect to an obligation which is to be discharged eventually by voluntary donation of labor. Tangible payment supporting a contract of employment, as basis of master and servant relationship, is founded upon receipt of measurable monetary value which discharges the obligation created by the pledge. Argument premised upon applicability of this rule initially requires the invalid assumption that a "pledge" and "tithe" are synonymous.

■ Broadly speaking pledges are a bailment or delivery of personal effects not to be taken back until the debtor's obligation is discharged by payment; it is a personal obligation supported by consideration which creates a debtor and creditor relationship. 72 C.J.S. Pledges § 1, et seq. A pledge is defined as a solemn promise which under no circumstances shall be violated. 71 C.J.S. Pledge, p. 1190; *Hirsch v. Hirsch*, 32 Ohio App.2d 200, 289 N.E.2d 386. A tithe is payment of a tenth part of a specific thing, i. e. crops or money, as a voluntary contribution for religious or charitable purposes. Webster's New International Dictionary [2nd ed.] p. 2655. A charitable pledge executed because of mutual promises by others is said to be supported by consideration. *Larson's*, supra. A tithe offered as a beneficence is made without consideration beyond the tither's voluntary assumption of a moral or spiritual obligation.

■ Many decisions have pointed out requisite factors sufficient to create a master and servant relationship. Evidentiary factors which may show recognition of the relationship include commencement and duration of the agreement, right to hire and discharge and agreement as to payment.

However, the decisive test for determination of whether an employer and employee relationship existed is whether the employer retained a right of control and superintendence of the work. *Mahl v. McMahan*, Okl., 325 P.2d 78; *Parten v. State Industrial Court*, Okl., 496 P.2d 114.

■ The principal argument rests upon the claim that wages were received for labor performed on the day of injury. Credits to claimant's tithing for voluntary labor did not create a contract of hiring to support a master and servant relationship. Evidence concerning the pastor's hiring, superintendence and control of the work performed was insufficient as a matter of law to establish the relationship required to bring claimant under the Act, supra. *Skelton v. T. M. Abbott*, Okl., 346 P.2d 939. Also see *Hillcrest Hospital*, supra, and decisions reviewed which held waiver of tuition or expenses in return for voluntary labor did not establish master and servant relationship.

A further argument insists either respondent or the insurer mistakenly failed to list claimant as an employee on the payroll for compensation purposes. And, under decision in *Barney U. Brown & Sons, Inc. v. Savage*, 208 Okl. 668, 258 P.2d 183, it is inequitable and unjust to punish claimant by denying coverage under the insurer's policy. The evidence discloses no agreement or understanding as to payment, either when the work was discussed or at the time performed. The pastor's testimony discloses any of three options for receiving payment were left for claimant to select. This lack of definite agreement, and the fact claimant was not included on any payroll report, negates the claim that wages were agreed upon and the check issued, after claim for compensation was filed, represented wages paid in recognition of the hiring agreement. The circumstances clearly make the reasoning in *Savage*, supra, inapplicable, and State Industrial Court properly determined this question by the order entered.

Order sustained.

All Justices concur.